GLICK, Appellant,

v.

DOLIN; Linick et al., Appellees.

[Cite as *Glick v. Dolin* (1992), 80 Ohio App.3d 592.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 61225.

Decided Nov. 9, 1992.

*Harold Pollock Co., L.P.A.*, and *Harold Pollock*, for appellant.

*Gerald A. Messerman*, for appellees David M. and Diane H. Linick.

*Frederick D. Kanter*, for appellee W.R. Smith Pension Fund & Trust.

ANN McMANAMON, Judge.

In January 1986, David M. and Diane H. Linick purchased a house in Orange Village, Ohio for $212,000. The Linicks paid $21,000 as a downpayment and obtained a $190,800 mortgage for the balance of the purchase price from W.R. Smith & Co. Retirement Fund. William M. Dolin provided the Linicks with the downpayment.

Shortly after purchasing the house, the Linicks leased the property to Dolin and his wife. Under a four-year lease agreement, the Dolins paid $2042 a month in rent and $158 in monthly insurance and taxes. The rent payment equalled the Linicks' monthly mortgage payment. An addendum to the lease

gave the Dolins the option to purchase the property for the balance due on the mortgage at the end of the lease period, or January 1990.

In December 1987, Gregory R. Glick ("the creditor") became a $25,000 judgment creditor of William Dolin based upon unpaid legal services rendered by Glick. Unable to satisfy the judgment from Dolin's real or personal property, the creditor sought a creditor's bill and foreclosure against the Linicks, Dolin, the W.R. Smith & Co. Retirement Fund, and Cuyahoga County Treasurer Francis Gaul. In a motion for summary judgment, the creditor argued Dolin had an equitable interest in the Orange Village property which could satisfy the $25,000 judgment debt. The Linicks opposed the motion and sought summary judgment on the ground that Dolin was only a lessee of the property. The trial court granted summary judgment for the Linicks, thereby rendering the creditor's claims against the other defendants moot. See *Wise v. Gursky* (1981), 66 Ohio St.2d 241, 20 O.O.3d 233, 421 N.E.2d 150.

In a timely appeal, the creditor raises five assignments of error.[1] Upon review of the record, we affirm in part, reverse in part, and remand the cause to the common pleas court.

The creditor's first and second assignments of error contest, on procedural grounds, the trial court's summary judgment ruling in favor of the Linicks. We will address these assignments concurrently.

■ The creditor, initially, argues the trial court improperly granted the Linicks' motion for summary judgment after denying the creditor's motion on the basis that there were genuine issues of material fact for trial. The court's first entry denying the creditor's motion was an interlocutory order and subject to reconsideration any time before the entry of final judgment in the case. See *Maxey v. Lenigar* (1984), 14 Ohio App.3d 458, 459, 14 OBR 578, 579, 471 N.E.2d 1388, 1389. In *Maxey*, this court stated:

" * * * If the trial court errs in overruling a motion for summary judgment, it is not necessary that that court wait until the judgment is reversed upon appeal, but, instead, the court may correct its error either upon a motion for reconsideration or upon a new motion for summary judgment predicated upon the same law and facts."

It was within the trial court's discretion to reconsider, upon the Linicks' motion for summary judgment, whether there were genuine issues of material fact and to grant the Linicks' motion.

■ The creditor next argues the court was obligated to grant his motion for summary judgment since the Linicks did not oppose it with evidentiary

---

1. See Appendix.

materials. It is well established that "evidentiary material submitted by the movant may be relied upon by the respondent in support of the latter's argument that there is a genuine issue of material fact." *AAAA Ent., Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597, paragraph two of the syllabus. Further, when the movant's evidentiary materials do not establish the absence of a genuine issue, " 'summary judgment must be denied even if no opposing evidentiary matter is presented.' " (Emphasis omitted.) *Toledo's Great Eastern Shoppers City, Inc. v. Abde's Black Angus Steak House No. III, Inc.* (1986), 24 Ohio St.3d 198, 202, 24 OBR 426, 429, 494 N.E.2d 1101, 1104, quoting 10A Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d (1983) 523–524, Section 2739.

In their brief opposing the creditor's motion, the Linicks referred to the creditor's evidentiary materials in support of their position. Furthermore, as we will discuss in the fourth and fifth assignments of error, the record demonstrates there are genuine issues of material fact for trial. Thus, the creditor was not entitled to summary judgment as a matter of law even in the absence of opposing evidentiary materials. *Toledo's Great Eastern Shoppers City, supra.*

Accordingly, the creditor's first and second assignments of error are overruled.

In his third assignment of error, the creditor asserts he is entitled to judgment because the Linicks were parties to an illegal contract, they invoked the Fifth Amendment during discovery proceedings, and they had "unclean hands."

The creditor claims the Linicks and Dolin intentionally mischaracterized their agreement as a lease in order to hide Dolin's equitable interest in the Orange Village property and thereby defraud creditors. The creditor, however, failed to introduce any evidence that the alleged misrepresentations induced him to render the legal services which serve as the basis for the judgment debt. The record merely demonstrates that the creditor obtained a judgment against Dolin almost two years after the Linicks purchased and leased the property to Dolin. Thus, we cannot find that the Linicks or Dolin acted fraudulently or with "unclean hands" *vis-a-vis* the creditor in this case. See *North Coast Cookies, Inc. v. Sweet Temptations, Inc.* (1984), 16 Ohio App.3d 342, 344, 16 OBR 391, 394, 476 N.E.2d 388, 391, fn. 1.

The creditor also argues the Linicks invoked the Fifth Amendment to prevent discovery. The creditor again failed to support his allegations with evidentiary materials. Furthermore, it appears the discovery proceedings were part of a separate lawsuit not involving the creditor.

This assignment of error is overruled.

In his fourth assignment of error, the creditor asserts the court improperly granted summary judgment for the Linicks. Specifically, the creditor claims the Linicks hold Dolin's equitable interest in the property in a constructive or purchase-money resulting trust.

A motion for summary judgment should be granted only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Civ.R. 56(C). In reviewing a summary judgment motion, the facts must be construed in a light most favorable to the nonmoving party, and judgment should be entered only if reasonable minds could reach but one conclusion. *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 517 N.E.2d 904; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

In *Bilovocki v. Marimberga* (1979), 62 Ohio App.2d 169, 16 O.O.3d 369, 405 N.E.2d 337, this court held:

" 'A constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, or through a breach of a fiduciary duty, or through the wrongful disposition of another's property. The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it. Ordinarily a constructive trust arises *without regard to the intention* of the person who transferred the property.' " (Emphasis omitted.) *Id.* at 171–172, 16 O.O.3d at 371–372, 405 N.E.2d at 340, quoting 5 Scott on Trusts (4 Ed.1967), Section 404.2.

Thus, a constructive trust is an equitable remedy imposed to prevent fraud or unjust enrichment. *Id.*

As we previously noted, the creditor failed to present any evidence that he was misled by the 1986 transaction involving the Linicks, Dolin and the Orange Village property. Nothing in the records indicates the creditor provided the unpaid-for legal services to Dolin in reliance upon the property as security for payment of the debt. The only evidence offered indicates the creditor obtained a judgment two years after the challenged transaction. Since there is no evidence the creditor was defrauded or that the Linicks or Dolin were unjustly enriched at the creditor's expense, the trial court properly found no constructive trust.

The creditor also urges imposition of a purchase-money resulting trust. In *Bilovocki*, we stated:

"To be distinguished from a constructive trust is the entity known as a resulting trust. In this class of trusts, the courts seek to *enforce the intention* of the parties.  * * *

" 'A resulting trust has been defined as "one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title." * * * ' " (Emphasis *sic.*) *Id.* at 172, 16 O.O.3d at 371, 405 N.E.2d at 341, quoting *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513, 515–516, 60 O.O. 481, 482–483, 138 N.E.2d 15, 17–18. See, also, *John Deere Indus. Equip. Co. v. Gentile* (1983), 9 Ohio App.3d 251, 254–255, 9 OBR 425, 428–430, 459 N.E.2d 611, 615–617. Typically, a purchase-money resulting trust arises when property is transferred to one person but the entire purchase price is paid by another. Restatement of the Law 2d, Trusts (1959) 393, Section 440; 5 Scott on Trusts, *supra,* at Section 440.

A purchase-money trust also may arise where an aliquot part of the purchase price is paid by someone other than the legal title holder. *Gashe v. Young* (1894), 51 Ohio St. 376, 38 N.E. 20. See, also, 5 Scott on Trusts, *supra,* at Section 454; Restatement of the Law 2d, Trusts, *supra,* at Section 454. Although an aliquot part is one exactly contained in the whole without a remainder, the term is not applied in its literal mathematical sense. *Strack v. Strack* (June 4, 1981), Montgomery App. No. 7098, unreported at 8, 1981 WL 2817. See, also, 5 Scott on Trusts, *supra,* at Section 454. In Restatement of Law 2d, Trusts, *supra,* at Section 454, the equitable owner's interest is described as follows:

"Where a transfer of property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise."

Thus, the equitable owner has an interest in such proportion as the amount he paid bears to the total purchase price. Cf. *Lewis v. Akerberg* (C.P.1953), 66 Ohio Law Abs. 545, 553, 118 N.E.2d 166, 171; *Tatum v. Tatum* (1959), 111 Ohio App. 221, 224, 13 O.O.2d 67, 68, 166 N.E.2d 157, 160.

To support his claim that the relationship between the Linicks and Dolin was not merely that of a landlord and tenant, the creditor offered evidence the Linicks took legal title to the Orange Village property on Dolin's behalf. We note the creditor failed to authenticate any of this evidence but, since the Linicks did not move to strike or otherwise object, any defects in the evidence

were waived. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 83, 523 N.E.2d 902, 907. For the most part, the creditor's unauthenticated evidence consisted of copies of documents offered in a separate lawsuit between the Linicks and Dolin.

The creditor submitted the affidavit of William Dolin, which states Dolin decided to purchase the property in the fall of 1985 but, because of financial difficulties, would have been unable to obtain financing. Through Attorney Frederick Kanter, Dolin met David Linick, who agreed to purchase the property for Dolin in exchange for a $20,000 fee. Dolin further averred:

"At Kanter's request, I reiterated that I was willing to pay $20,000.00 for assistance in purchasing the property. Kanter and Linick stated at that meeting that, since Linick was buying the house for me and since I was to own the house, I would be responsible for all of the costs in connection with the acquisition and financing of the property, including but not limited to, the downpayment, closing costs, monthly mortgage payments, taxes, insurance, and maintenance of the property."

Kanter allegedly arranged for the mortgage with his client, W.R. Smith & Co. Retirement Fund.

In a letter dated October 11, 1985, David Linick wrote Dolin:

"The purpose of this letter is to confirm our intentions and procedure that we will follow in in [*sic*] order that you will be able purchase [*sic*] the above residential premises with me acting as your conduit.

"Firstly, as you are aware I have entered into a purchase agreement with the present owners (Rosens), contingent upon my being able to obtain ninety percent (90%) financing thereon. The down payment monies have and/or will be provided by you, along with any and all expenses I may incur in obtaining the property.

"Additionally, you have further agreed to indemnify me against and hold me harmless from any claims * * * or any other liabilities that I may incur in any matter relative to this transaction."

In a deposition taken one year after legal title transferred to the Linicks, David Linick averred he charged Dolin for all expenses associated with the transaction. Finally, in an affidavit, the seller of the Orange Village property stated he negotiated only with Dolin and Kanter regarding the sale of his property. Shortly before the purchase agreement was executed, the seller learned that the Linicks would take title to the property.

The Linicks did not refute any of this evidence, but merely relied upon the lease agreement and argued that this document defined their relationship with

Dolin. The trial court agreed and further held that, since Dolin did not pay all or a "substantial portion" of the purchase price, no resulting trust could exist.

Based upon the record, we find the trial court improperly granted summary judgment for the Linicks. The type of parol evidence offered by the creditor may be admissible to contradict the terms of the deed and/or the lease agreement and to demonstrate the land is held in trust for Dolin. See *John Deere, supra*, 9 Ohio App.3d at 253, 9 OBR at 427, 459 N.E.2d at 614. Furthermore, there exists no requirement that a substantial portion of the purchase price be paid before a resulting trust arises. As previously discussed, the equitable owner has an interest in such proportion as the amount he paid bears to the total purchase price. Restatement of Laws 2d, Trusts, *supra*, at Section 454. Finally, there exists a genuine issue of material fact as to whether the Linicks and Dolin intended for the Linicks to hold the property in a purchase-money resulting trust for Dolin.

Accordingly, this assignment of error is overruled in part and sustained in part.

In his fifth assignment of error, the creditor asserts the court improperly held that Dolin did not have an attachable interest in the Orange Village property.

As we previously discussed, there is a genuine issue concerning whether the Linicks hold any of the property in trust for Dolin. If a jury should find such an interest to exist, the creditor could reach this equitable interest in his creditor's suit pursuant to R.C. 2333.01, which provides:

"When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, * * * shall be subject to the payment of the judgment by action."

The trial court, however, properly determined that the creditor could not pursue a foreclosure action under R.C. 2329.01. It is well established that equitable interests cannot be levied upon or sold under execution. See *Culp v. Jacobs* (1930), 123 Ohio St. 109, 174 N.E. 242; *Basil v. Vincello* (1990), 50 Ohio St.3d 185, 553 N.E.2d 602, syllabus.

Finally, the creditor seems to argue that the option Dolin holds on the property is subject to attachment under R.C. 2333.01. This statute provides only for the attachment of equitable interests. "It is only after the holder of [an] option has accepted the option that he becomes the equitable owner of the property * * *." *Sause v. Ward* (1917), 7 Ohio App. 446, 450–451, 30 Ohio C.D. 1, 28 Ohio C.A. 33. The record contains no evidence Dolin exercised the

option to purchase the property and, thus, the option is not an equitable interest subject to attachment.

This assignment of error is overruled in part and sustained in part.

The judgment is affirmed in part, reversed in part and the cause is remanded to the trial court for further proceedings.

*Judgment affirmed in part, reversed in part and cause remanded.*

MATIA, C.J., and SPELLACY J., concur.

## APPENDIX

"I. The trial court erred in granting defendant-appellee [*sic*] Linicks' motion for summary judgment where the trial court had already ruled, only three weeks prior to the granting of such motion, that there were genuine issues of fact for the court to determine, thus precluding the granting of a summary judgment for either party.

"II. The trial court erred in denying plaintiff-appellant's motion for summary judgment since the response thereto filed by the Linicks was legally insufficient to overcome plaintiff-appellant's motion for summary judgment.

"III. The trial court erred in failing to find the Linicks barred from relief because the Linicks are parties to an illegal contract, because they have previously asserted the Fifth Amendment to preclude discovery on the subject transaction, or because the Linicks have unclean hands.

"IV. The trial court erred in holding that the purported 'lease' document between the Linicks and Dolin is in fact a lease and that the interest of Dolin in the premises is not an interest in a trust or a loan.

"V. The trial court erred in holding that Dolin does not have a presently attachable interest in the property."