[Cite as *JPMorgan Chase Bank, N.A. v. Jackson*, 2014-Ohio-320.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 13-CA-41 |
| BRIDGETTE CRAWMER JACKSON, | : | |
| ET AL | : | |
| | : | O P I N I O N |
| Defendant-Appellant | | |

CHARACTER OF PROCEEDING:        Civil appeal from the Licking County Court
                                                          of Common Pleas, Case No. 12CV00345

JUDGMENT:                                      Affirmed

DATE OF JUDGMENT ENTRY:        January 29, 2014

APPEARANCES:

For Plaintiff-Appellee                       For Defendant-Appellant

ANDREW GEORGE                         JETTA MENCER
STEVEN E. ELDER                          One South Park Place
STEVEN E. ELDER CO., LPA          Newark, OH  43055
731 Fifth Avenue
Wilmington, OH  45177

*Gwin, P.J.*

**{¶1}** Appellant appeals from the following judgments entries of the Licking County Common Pleas Court: the January 25, 2013 judgment entry denying summary judgment and the April 30, 2013 judgment entry incorporating a March 18, 2013 memorandum of decision finding that appellant's interest in the property is subject to a constructive trust, that appellant is entitled to an equitable lien, and that appellant is entitled to equitable subrogation.

### Facts and Procedural History

**{¶2}** On January 5, 2008, Bridgette Crawmer nka Jackson ("Crawmer") contracted to purchase the property located at 3085 Cypress Bend in Newark, Ohio. Crawmer's signature was the only buyer's signature on the purchase contract. Crawmer was the sole applicant for a loan of approximately $128,000 to fund the purchase of the property and the loan was originated by 1st Metropolitan Mortgage, acting as a mortgage broker. Appellee JPMorgan Chase Bank, N.A., successor by merger to Chase Home Finance, LLC, financed the purchase and Crawmer utilized the funds to pay the costs of the transaction, broker fees, taxes, a prior first mortgage held by Huntington Bank in the amount of $90,058.50, and the balance of the purchase price to the seller. At a closing held on January 24, 2008, Crawmer signed a note to appellee and executed a mortgage in favor of appellee. Also at the closing on January 24, 2008, a deed was executed from the sellers to Crawmer and appellant Aaron Jackson ("Jackson"), Crawmer's then-fiancée, and now husband. Jackson attended the closing, but did not sign the mortgage or execute any documents. The loan application,

purchase contract, settlement statement, promissory note, mortgage, and commitment for title insurance were executed by Crawmer only.

**{¶3}** In June of 2010, Crawmer and Jackson filed a Chapter 7 bankruptcy petition and were discharged by the bankruptcy court on October 12, 2010. During the pendency of the bankruptcy proceedings, Sara Daneman, the Chapter 7 trustee, instituted an adversary proceeding against appellee to have appellee's mortgage declared invalid as to the ½ interest of Jackson based upon the fact that he did not execute the mortgage. On August 5, 2011, the bankruptcy court entered an order on a motion to approve compromise of claims against appellee. The order provides that the trustee was authorized to settle the adversary proceeding against appellee for a $20,000 payment from appellee to the trustee. The bankruptcy court found that the proof of claim filed by appellee in the amount of $127,347.85 "will be treated as fully secured."

**{¶4}** On March 13, 2012, appellee filed a complaint in foreclosure against Crawmer, the State of Ohio Department of Taxation, the Treasurer of Licking County, and Jackson. Appellee amended its complaint on March 23, 2012 to add claims for equitable relief. After Crawmer and Jackson filed answers to the complaint, appellee filed a motion for partial summary judgment against Jackson and Crawmer and Jackson filed his own motion for summary judgment. The trial court denied both motions for summary judgment on January 25, 2013 and subsequently conducted a bench trial on appellee's amended complaint in foreclosure on February 27, 2012.

**{¶5}** Frank Dean, Jr., a home loan research officer and prior loan originator for appellee, testified at the bench trial. Dean testified that Exhibit K is a record kept in

appellee's ordinary course of business and consists of loan closing instructions from appellee to Title First of Columbus. Exhibit K instructs Title First to ensure appellee had a first mortgage lien on the subject property by having all necessary parties execute the mortgage. Dean testified it is customary for the buyer to select a title agent rather than the lender making this selection and that appellee did not select Title First as the title agent for this transaction. Dean testified Crawmer was the only applicant for the loan. Dean further stated the title insurance company prepared the deed and, despite the commitment for title insurance and loan closing instructions stating the deed should be in the name of Crawmer only, the title company mistakenly placed Jackson's name on the deed. Dean testified there was nothing in the system to indicate that appellee was aware of the problem or attempted to correct the mistake and that, at the closing, First Title should have notified appellee of First Title's error.

**{¶6}** At the trial, Jackson testified that he notified one of the agents at the closing that he needed to sign something, but Jackson could not remember who he spoke to or whether the person represented appellee or First Title. Crawmer confirmed that Jackson inquired as to why he did not have to sign any documents at the closing. Jackson stated he was aware appellee was financing the purchase of the property and that "we had a mortgage with Chase," but that he did not contribute towards the purchase price or closing costs for the property. Jackson stated he was not on the loan application because he had credit issues, but that he intended to be an owner of the property with Crawmer. Crawmer testified she intended to purchase the property with Jackson. Jackson stated he made mortgage payments with Crawmer to appellee, as they married subsequent to the closing date in 2008.

**{¶7}** The trial court issued a memorandum of decision on March 18, 2013, ruling in favor of appellee and finding that appellee is entitled to a first lien on the entire property. The trial court found Jackson's interest in the property was subject to a constructive trust, that appellee was entitled to an equitable lien, and that appellee was entitled to equitable subrogation. The trial court based its ruling on the fact that appellee advanced the purchase price for the property and paid the bankruptcy trustee to purchase Jackson's ½ interest from the bankruptcy estate in an adversary proceeding. The trial court incorporated this memorandum of decision into a final judgment entry issued on April 30, 2013.

**{¶8}** Appellants appeals from the January 25, 2013 and April 30, 2013 judgment entries and assigns the following as error:

**{¶9}** "I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

**{¶10}** "II. THE TRIAL COURT ERRED IN FINDING THAT APPELLEE WAS ENTITLED TO AN EQUITABLE LIEN ON THE PREMISES.

**{¶11}** "III. THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S INTEREST IN THE PROPERTY IS SUBJECT TO A CONSTRUCTIVE TRUST.

**{¶12}** "IV. THE TRIAL COURT ERRED IN FINDING THAT APPELLEE IS ENTITLED TO EQUITABLE SUBROGATION.

**{¶13}** "V. THE TRIAL COURT ERRED IN FAILING TO FIND THAT APPELLEE'S EQUITABLE CLAIMS DID NOT SURVIVE BANKRUPTCY.

**{¶14}** "VI. THE TRIAL COURT'S FINDING THAT THE EQUITIES FAVOR APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶15} For ease and efficiency of discussion, we shall address appellant's assignments of errors out-of-order.

VI.

{¶16} Appellant argues the trial court's finding that the equities favor appellee is against the manifest weight of the evidence. We disagree.

{¶17} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base its judgment. *Cross Truck Equip. Co. v. The Joseph A. Jeffries Co.*, 5th Dist. No. CA5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶18} In this case, we find the trial court's determination that the equities favor appellee is supported by some competent, credible evidence. Though First Title listed Jackson as a grantee on the deed for the property, both the commitment for title insurance and loan closing instructions provided by appellee indicated the deed was to be in Crawmer's name only. Jackson testified he was aware appellee was financing the property and that the property would be subject to a mortgage. Jackson did not contribute any payment toward the purchase price or closing costs, though he did make mortgage payments after he and Crawmer married. In addition, the funds from appellee's loan were used to satisfy a prior first mortgage.

**{¶19}** Also key in weighing the equities in this case is the Chapter 7 bankruptcy petition filing by Crawmer and Jackson in 2010. The Chapter 7 trustee instituted an adversary proceeding against appellee to have appellee's mortgage declared invalid as to the ½ interest of Jackson based upon the fact that he did not execute the mortgage. This adversary proceeding was instituted because Jackson, as the chapter 7 debtor, held a cause of action against appellee and when a debtor files for chapter 7 relief, they "surrender to the trustee control over their prepetition legal interests." *In re Smithey*, Bankr. N.D. Ohio No. 10-30310, 2011 WL 3102308. In August of 2011, the bankruptcy court granted an order on trustee's motion to compromise claim with appellee for a $20,000 payment from appellee. Thus, appellee paid the $20,000 amount to settle Jackson's claim regarding his lack of mortgage execution. Jackson clearly benefited from this payment as the funds were utilized to pay Jackson's creditors from which Jackson incurred debt and allowed Jackson to obtain a bankruptcy discharge with no personal liability on the mortgage of the property. Accordingly, we find the trial court's determination that the weighing of the equities favors appellee is not against the manifest weight of the evidence. Appellant's sixth assignment of error is overruled.

II.

**{¶20}** Appellant argues the trial court erred in finding appellee was entitled to an equitable lien on the property. We disagree. In order for an equitable lien to arise, there are three elements required: (1) a duty, debt, or obligation; (2) a res; and (3) an intent, either express or implied, that the specific property will serve as security for the payment of the debt or obligation. *Morley v. First Federal Savings and Loan Assn. of Warren*, 11th Dist. No. 97-T-0142, 1998 WL 553619 (June 12, 1998). An equitable lien

may "arise either from an express written contract which shows an intention to charge some particular property with a debt or obligation, or may be implied and declared by a court of equity on the general considerations of right and justice as applied to relations of the parties and the circumstances of their dealings." *Koon v. Clapp*, 11th Dist. No. 89-P-2101, 1990 WL 170684 (Nov. 2, 1990).

**{¶21}** The trial court found that due to general consideration of justice as applied to the relations of the parties and the circumstances of their dealings, an equitable lien arose because all the parties understood and intended that appellee was providing the purchase money and would have a first lien on the property. Based upon a review of the evidence, we find there was competent and credible evidence to support the trial court's decision. As indicated above, Jackson testified he was aware appellee was financing the property and that the property would be subject to a mortgage. Further, the funds from appellee's loan were used to satisfy a prior first mortgage. Accordingly, appellant's second assignment of error is overruled.

### III.

**{¶22}** Appellant contends the trial court erred in finding that appellant's interest in the property is subject to a constructive trust. We disagree. The Ohio Supreme Court defined a constructive trust as a:

> trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good

conscience, either has obtained or holds the legal right to property

which he ought not, in equity and good conscience, hold and enjoy.

It is raised by equity to satisfy the demands of justice.

*Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 280-81, 2006-Ohio-2418.

**{¶23}** "A trial court's decision regarding the existence of a constructive trust will not be reversed where it is supported by some competent, credible evidence going to all the essential elements of the case." *In the Matter of Estate of John C. Brunswick*, 12th Dist. No. CA2006-08-096, 2007-Ohio-5396. "The basis of the constructive trust is the unjust enrichment which would result if the person having the property were permitted to retain it. Ordinarily a constructive trust arises without regard to the intention of the person who transferred the property." *Glick v. Dolin*, 80 Ohio App.3d 592, 609 N.E.2d 1338 (8th Dist. 1992). Thus, a constructive trust should be imposed if the failure to do so would result in unjust enrichment. *Id.* The elements appellee must prove to establish unjust enrichment are: (1) the existence of a benefit conferred by appellee upon Jackson; (2) knowledge by Jackson of the benefit; and (3) retention of the benefit by Jackson under circumstances where it would be unjust to do so without payment. *Id.*

**{¶24}** In this case, we agree with the trial court that equity favors the imposition of a constructive trust. Jackson received two benefits that he retained and had knowledge of: (1) the payment by appellee of the purchase of the property that Jackson acquired an interest in by virtue of a mistake in adding him to the deed and (2) the $20,000 payment to the creditors to which he was indebted as a result of appellee's payment to the bankruptcy trustee in Jackson's bankruptcy case. Jackson acquired an

interest in the property by mistake and would be unjustly enriched if his interest in the property were not subject to appellee's lien.

**{¶25}** Based upon all the evidence, we find that there was competent and credible evidence to support the trial court's imposition of a constructive trust for the benefit of appellee and that Jackson holds the property in constructive trust for appellee.

IV.

**{¶26}** Appellant argues the trial court erred in finding appellee is entitled to equitable subrogation. We disagree.

**{¶27}** In Ohio, "[w]hen the rights of parties are clearly defined and established by law, the courts usually apply the maxim 'equity follows the law'; however, where the rights of the parties are not so clearly delineated, the courts will apply board equitable principles of fairness." *Aurora Loan Services, LLC v. Molter*, 5th Dist. Delaware No. 09 CAE 0086, 2010-Ohio-3704. The definition of equitable subrogation is that which " * * * arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *State Dept. of Taxation v. Jones,* 61 Ohio St.2d 99, 399 N.E.2d 1215 (1980).

**{¶28}** The doctrine of equitable subrogation depends upon the facts and circumstances in each case and "grants relief to a party in order to prevent fraud, or to grant relief from mistake." *Id.* To claim the benefits of equitable subrogation, a "party's equity must be strong and clear" and the basis for the claim of equitable subrogation must be readily apparent. *Aurora Loan Services, LLC v. Molter*, 5th Dist. Delaware No. 09 CAE 0086, 2010-Ohio-3704. Equitable subrogation has been described as a theory

of unjust enrichment, preventing parties from receiving that to which they are not entitled. *Sky Bank Mid Am Region v. Mar-Metal Mfg., Inc.,* 3rd Dist. Wyandot No. 16-09-02, 2009-Ohio-2193. Equitable subrogation may not be utilized to benefit parties who are negligent in their business transaction or failed to act with ordinary and reasonable practices. *Aurora Loan Services, LLC v. Molter*, 5th Dist. Delaware No. 09 CAE 0086, 2010-Ohio-3704.

{¶29} We find there is competent and credible evidence to support the trial court's determination that the equities weigh in favor of appellee. Appellee failed to review the deed before closing and failed to correct the mistake in the deed after closing. However, Dean's testimony establishes that appellee did not negligently prepare the documents, select the title agent, or have a representative at the closing who could have prevented the error. In appellee's closing instructions and commitment for title insurance, appellee instructed the title agent to prepare the deed in Crawmer's name. It was the parties' intention that appellee would have the first lien on the property. Jackson testified he was aware appellee was financing the purchase of the property. Appellee paid the purchase price that satisfied the existing lien on the property at issue and it was only through a mistake that plaintiff did not have a lien on the entire property. Jackson directly benefited from the funds provided by appellee as the prior first mortgage on the property where Jackson is on the deed would not have been paid off and released except for the loan of appellee and Jackson would have no interest in the property but for appellee's payment. Jackson also benefited from the funds paid by appellee to the trustee in Jackson's bankruptcy case because the funds were used to pay his creditors and debts he incurred.

{¶30} Jackson cites *ABN AMRO Mtge. Group, Inc. v. Henson* for the proposition that equitable subrogation is not appropriate when the appellant had no knowledge of the debt or participate in the debt that encumbered the real estate. 5th Dist. No. 04CA8, 2005-Ohio-2725. However, the *Henson* case is distinguishable upon the facts. In this case, Jackson knew about the debt encumbering the property, participated in the closing of the property, and testified that he was aware appellee was financing the purchase of the property.

{¶31} Further, Jackson would be unjustly enriched if he were given a ½ unencumbered interest in the property where a mistake caused Jackson's name to be placed on the deed to the property. Jackson would also be unjustly enriched due to the payment appellee made in his bankruptcy case. Appellee paid $20,000 in an adversary proceeding Jackson's bankruptcy case to settle the trustee's claim regarding Jackson's ½ interest in the property. These funds were utilized by the trustee to pay Jackson's creditors to whom he was indebted.

{¶32} Accordingly, we find there is competent and credible evidence to support the trial court's decision that the equities favor appellee in an equitable subrogation analysis. Appellant's fourth assignment of error is overruled.

V.

{¶33} Appellant argues the trial court erred in failing to find that appellee's equitable claim did not survive bankruptcy. We disagree. The enforcement of an equitable lien is an in rem action and, though a debtor's personal liability with respect to the debt is extinguished by a bankruptcy discharge, an equitable lien as applied to these facts as described *infra,* is not extinguished by a bankruptcy discharge. *In re Pecora*,

297 B.R. 1, 4 (Bankr. W.D.N.Y. 2003); *In re Stratton*, 106 B.R. 188, 193 (Bankr. E.D. Cal. 1989).  Accordingly, appellant's fifth assignment of error is overruled.

I.

**{¶34}** Appellant argues the trial court erred in denying his motion for summary judgment requesting a finding that he owns the ½ interest in the property free and clear of appellee's lien.  Based upon our disposition of appellant's assignments of error II – VI, *supra*, we find the trial court did not err in denying appellant's motion for summary judgment.  Appellant's first assignment of error is overruled.

**{¶35}** Based on the foregoing, we overrule appellant's assignments of errors I, II, III, IV, V, and VI are overruled. The January 25, 2013 judgment entry of the Licking County Court of Common Pleas and the April 30, 2013 judgment entry incorporating a March 18, 2013 memorandum of decision of the Licking County Court of Common Pleas are affirmed.

By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur